# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1754 | **DATE** | 3/27/2001 |
| **CASE TITLE** | Salon Group, Inc., an Ohio Corp., d/b/a Jacques Dessange vs. Libby D. Salberg, Individually and Howard David Deutsch, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Counts I, II, IV, V, and VI are dismissed, and defendants Franklin Holdings, S.A. and French Hair Style and Beauty Corp. are dismissed from this action. Any amended complaint must be filed within twenty-one (21) days of the issuance of this order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 29 2001 | |
| ✓ | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 25 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 01 MAR 29 AM 8:35 | |
| RJ | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED

MAR 29 2001

| | | |
|---|---|---|
| SALON GROUP, INC., an Ohio Corporation, d/b/a JACQUES DESSANGE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| LIBBY D. SALBERG, Individually and HOWARD DAVID DEUTSCH, Individually and both jointly d/b/a DEUTSCH & SALBERG, Attorneys; YVES ANTHONIOZ, Individually and as agent and employee of FRENCH HAIR STYLE AND BEAUTY CORP., a New York Corporation; JACQUES DESSANGE, INC., a New York Corporation; and FRANKLIN HOLDINGS, S.A., a French Corporation, | ) ) ) ) ) ) ) ) ) ) ) | No. 00 C 1754  MAR 29 2001  Judge Joan B. Gottschall |
| Defendants. | ) | |

## Memorandum Opinion and Order

Salon Group, Inc. has filed a lawsuit against French Hair Style and Beauty Corp., Jacques Dessange, Inc., Franklin Holding, S.A., and others alleging breach of contract, fraud, and violations of the Racketeering Influenced in Corrupt Organizations Act ("RICO"). These charges stem from the defendants' agreements to assist Salon in the creation and operation of a hair salon in Chicago known as DESSANGE/CHICAGO. The defendants, French Hair Style and Beauty Corp., Jacques Dessange, Inc., and Franklin Holding, S.A. now move to dismiss all counts of the complaint against them. For the reasons set forth below, the motion is granted.

### Background

Salon Group ("Salon") is an Ohio corporation with its principal place of business in

25

Chicago. (Am. Compl. ¶5.) Salon entered into agreements with French Hair Style and Beauty Corporation ("FHSBC") to operate a hair and beauty salon in Chicago called "Jacques Dessange Hair Salon" ("DESSANGE/CHICAGO"). (Am. Compl. ¶5.)

FHSBC, a New York corporation, "is the holder of all rights to license the federally registered trademark 'Jacques Dessange,' and other related trademarks. . ., which Marks are known throughout the world in connection with luxury hair care and hair salons." (Exhibit A to Am. Compl. at 1.) According to FHSBC, FHSBC "through Jacques Dessange himself, its team of professional hairdressers, and its research at its hair care institute in Paris, has Know-How and technical knowledge in the field of hair care, hair cutting, hair fashion and trend setting, and hair products that have acquired worldwide recognition and prestige." (Id.) As asserted by Salon Grp., FHSBC is a wholly owned subsidiary of Franklin Holding, S.A.. (Am. Compl. ¶7.) Salon's contract with FHSBC allowed Salon to use, among other things, the Dessange name and the Dessange method of hairstyling in operating Salon's Chicago hair salon, DESSANGE/CHICAGO. (Exhibit A to Am. Compl. at 1.)

Jacques Dessange, Inc. ("JDI"), a New York corporation, is a beauty salon chain in New York City with fifty individuals working across three stores. (Ltr. to INS from Yves Anthonioz, Attach. to Exh. B to Am. Compl.) JDI is a 100% wholly owned subsidiary of Franklin Holding, S.A.. (Id.) According to its letterhead, JDI's executive vice-president during the relevant events of this case was Yves Anthonioz. (Id.) Based on correspondence presented by Salon, it appears that Anthonioz was the primary contact person with JDI, FHSBC, and Franklin Holding, S.A.. Anthonioz arranged to bring hairstylists from France to work for Salon in

2

DESSANGE/CHICAGO. On visa application forms and letters submitted to the United States Immigration and Naturalization Service ("INS") on behalf of these hairstylists, Anthonioz claimed that the hairstylists were being brought to the United States in order to work in JDI's stores in New York City. (Id.)

Franklin Holding, S.A. ("Franklin"), a French company, is the parent company to FHSBC and JDI. According to a letter from Yves Anthonioz to the INS, "Franklin Holding S.A. operates a chain of beauty salons throughout the world under the Jacques Dessange name. We have over 220 salons in France and 90 salons throughout the world." (Ltr. to INS from Yves Anthonioz, Attach. to Exh. B to Am. Compl.) The hairstylists, whom Anthonioz sent to Chicago to work in DESSANGE/CHICAGO, originally worked for Franklin in France. (Id.)

According to the plaintiff's amended complaint, Salon entered into a licensing agreement with FHSBC related to the operation of Salon's hair salon in Chicago known as DESSANGE/CHICAGO. Under the agreement, it is alleged, Salon was obligated to hire hairstylists from France, familiar with the Jacques Dessange method of hair-styling and coloring, and FHSBC was required to arrange for the provision of these hairstylists. Additionally, Salon agreed to pay all necessary expenses associated with the hairstylists' applications for visas to work in Chicago. FHSBC allegedly agreed, in turn, to ensure completion of the necessary paperwork related to the immigration of these hairstylists.

In order to obtain the required visas, JDI's executive vice-president, Yves Anthonioz, "insisted" that Salon hire the law firm of Deutch and Salberg ("D&S") to perform the necessary immigration work. (Am. Compl. ¶¶17-18.) D&S then advised that Salon and FHSBC obtain

3

L-1(a) visas for the five hairstylists who were supposed to come from France to Chicago in order to work in the salon. Pursuant to the Immigration and Nationality Act, 8 U.S.C. §1101(a)(15)(L), *et. seq.*, an L-1(a) Visa is available "when an American company and a foreign company, having common ownership of at least 50%, seek to transfer management or executive personnel from a foreign company's operation to the United States company." (Am. Compl. ¶21). Salon agreed to apply and pay for these visas. After D&S obtained the visas, the five hairstylists entered the United States and began working for DESSANGE/CHICAGO.

On or about October 30, 1997, the INS entered DESSANGE/CHICAGO, removed the French hairstylists from the salon, and took them into custody. The INS asserted that they took this action because the hairstylists had entered the U.S. on invalid visas. According to the INS, as alleged by Salon, the hairstylists were not entitled to hold L-1(a) visas because: (1) the hairstylists did not have management/executive positions; (2) there was no common ownership between Salon and Franklin, JDI, or FHSBC; (3) the permits were not for employment in Chicago; (4) the hairstylists were not employees of Franklin for the requisite period of time under the statute; and (5) Franklin had provided "false and fraudulent" information. (Am. Compl. ¶ 28(e).)

Salon was then forced to close DESSANGE/CHICAGO until December 1, 1998 when it re-opened for business. Salon alleges that because of the "adverse publicity and the negative business conditions engendered by the INS actions and the ongoing effects after the INS actions," Salon was forced to close DESSANGE/CHICAGO permanently in June, 1999. (Am. Compl. ¶30.) Since then, Salon alleges, it has been unable to re-open its operations because it has been

unable to locate hairstylists who are knowledgeable in the Dessange method and who have valid visas.

Salon is now suing the defendants, FHSBC, Franklin, and JDI for the losses it suffered following the removal of the hairstylists. In Count I, Salon alleges that FHSBC breached the licensing agreement it signed with Salon in relation to the operation of DESSANGE/CHICAGO. In Count II, Salon alleges that all the defendants perpetrated fraud on Salon. In Count IV, Salon alleges that all the defendants violated §2 of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 501/1. In Count V, Salon alleges that the defendants committed violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961, *et. seq.*; and in Count VI, Salon asserts that the defendants violated the Illinois Franchise Disclosure Act, 815 ILCS 705/6. In Count III of its complaint, Salon alleges legal malpractice against D&S, the attorneys hired by Salon to process the visas. However, neither D&S nor its attorneys individually join in the present motion to dismiss. Therefore, this opinion will address all counts but Count III.

The defendants have moved to dismiss (1) all claims against Franklin on the basis of a lack of personal jurisdiction; (2) all claims against FHSBC and Franklin for insufficiency of service of process; and (3) all counts of the complaint against all defendants for failure to state a claim and for lack of subject matter jurisdiction.

This opinion will begin with an examination of whether the court has subject matter jurisdiction over this case. Then, it will proceed to decide whether it has personal jurisdiction over Franklin. Next, it will examine whether Franklin and FHSBC were served properly.

Finally, the opinion will go on to determine whether the substantive allegations of all five counts have been properly pled.

## Analysis

### Subject Matter Jurisdiction

The first issue is whether this court has subject matter jurisdiction over this case. Although the defendants have made a 12(b)(1) motion challenging the subject matter jurisdiction of this court, they have not refuted the plaintiff's assertions that this court has proper subject matter jurisdiction on diversity grounds. The defendants, whose principal places of business and incorporation are either France or New York, are diverse from Salon, an Ohio corporation whose principal place of business is Chicago. In addition, Salon claims damages exceeding $75,000. The requirements for diversity jurisdiction have therefore been met. *See* 28 U.S.C. §1332.

### Personal Jurisdiction over Franklin

Franklin has moved to dismiss pursuant to Rule 12(b)(2), arguing that the court lacks personal jurisdiction over Franklin since Franklin neither does business in Illinois nor took any actions in or outside of Illinois that might have been expected to have consequences within Illinois.

A federal district court exercising diversity jurisdiction has personal jurisdiction if a state court in the district in which it sits would have jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). The exercise of jurisdiction must be consistent with the Illinois long-arm statute and the Illinois and federal constitutions. *Id.* at 1276. Plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *See Steel Warehouse of*

*Wisconsin, Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). To withstand a motion to dismiss for lack of personal jurisdiction, a plaintiff must provide sufficient evidence to establish at least a prima facie case of personal jurisdiction. *See Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987); *see also Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (stating that "a prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record; the plaintiff must go beyond the pleadings and make affirmative proof.").

Personal jurisdiction over a non-resident defendant may be based on either specific or general contacts with the forum. *See RAR, Inc.*, 107 F.3d at 1277. Specific jurisdiction exists when the claims alleged themselves relate to, or arise out of, the defendant's contacts with the forum. *See id.* General jurisdiction requires continuous and systematic general business contacts with the forum. *See id.* Salon's argument in support of the exertion of jurisdiction over Franklin does not appear to be based on any conduct of Franklin itself in Illinois but rather that "they [sic] had enough control over Dessange and FHSBC, which clearly were doing business in Illinois." (Pl. Resp. at 3.) It is thus apparently plaintiff's theory that Franklin so controlled its subsidiaries, FHSBC and Dessange, that jurisdiction over Franklin would be proper by virtue of that control. Illinois courts recognize two methods by which a plaintiff can establish jurisdiction over a foreign parent based on the activities of its subsidiary. First, the plaintiff can provide evidence that justifies piercing the corporate veil of the subsidiary. *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir.1998). Alternatively, the plaintiff can show that the subsidiaries were acting as the parent's agent, so that in fact, the parent was doing business in Illinois, albeit through its subsidiaries. *See id.* at 541. Plaintiff has made no effort to

7

demonstrate that the corporate veil should be pierced but rather appears to rely primarily on the agency/control theory.

Salon's first major problem, an insurmountable one in the court's view, is that with respect to its agency/control theory, it relies on neither allegations in its complaint nor competent evidence submitted in connection with Franklin's motion. Rather, it relies on legal arguments taking up about one page of its response brief, pages 4-5. Even, however, if the court were to accept as evidence Salon's unsworn assertions in its brief (which it will not), Salon would fail to demonstrate that the court should exercise personal jurisdiction over Franklin.

Salon asserts that "there were numerous contacts between Franklin Holding and Illinois" (Pl. Resp. at 4) including "regular communication between Franklin Holding and its subsidiaries"(Id.); "[o]fficers of FHSBC and Dessange regularly reported to Franklin Holding's managing director" (Id.); "[t]he Managing Director of Franklin Holding, Benjamin Dessange is also the Vice President of FHSBC" (Id.). But these ties between a parent and a subsidiary are nothing more than the normal incidents of such a relationship. *See IDS,* 136 F.3d at 540. Beyond this, Salon gives the court nothing but vague conclusions. It states that "[m]any or most of Dessange's and FHSBC's officers and members of the board of directors have come from Franklin Holding" (Pl. Resp. at 4) and "Franklin Holding directs and controls its wholly-owned subsidiaries, Dessange and FHSBC, and through it [sic] has many contacts with Illinois." (Id.) Such vague, conclusory statements can add nothing to the court's consideration of this issue.

Salon has actually provided evidence, in the form of a declaration of John Mills, the president of Salon, that in December 1997, he attended two meetings in Chicago with a

8

representative of Franklin to "discuss possible reimbursement for the losses" Salon incurred as a result of the INS raids "and to further the process of bringing in more hairstylists to my salon who work for Jacques Dessange in France." (Decl. of John Mills at 1, Exh. A to Pl. Resp.) But the presence of a representative of the parent only after the events giving rise to the claim is insufficient to establish either specific or general jurisdiction, since the presence was not related to the acts giving rise to the claim, nor did it represent a continuous and systematic course of business.

Franklin's motion to dismiss for lack of personal jurisdiction is granted. Franklin's motion to dismiss based on improper service is denied as moot.

## Service of Process

Defendant FHSBC asserts that it was not properly served with process. Under Federal Rule of Civil Procedure 4(h)(1), service of process on a domestic or foreign corporation may be properly effected in a judicial district of the United States "in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or law to receive service of process. . . ." Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) provides that service of process is also proper if done "pursuant to the law of the state in which the district court is located, or in which service is effected. . . ." *Id.* at 4(e)(1). Under Illinois law, "a private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law." 735 ILCS §5/2-204.

Salon attempted to serve FHSBC by serving Yves Anthonioz, whom Salon asserts, and FHSBC denies, was a director of FHSBC at the time of service, March 23, 2000. The court notes, to begin with, that neither party has addressed the issue of whether, under Illinois law, a corporation can be served by service upon a director, at least without evidence that the director is the corporation's agent for purposes of accepting service. The only case the court has found addressing this issue is admittedly of ancient vintage, but it suggests that "agent or officer" language cannot be construed to encompass a corporate director. *See Sarelas v. Fagerburg*, 45 N.E.2d 690, 695 (Ill.App.Ct. 1942).

In contending that Anthonioz was a director, Salon points to a Dun & Bradstreet report and a report from the New York Department of State, one indicating that Anthonioz was a director of FHSBC and the other indicating that he was Chairman of the Board. (Exh. E, F to Pl. Resp.) FHSBC provides a declaration by Benjamin Dessange, the managing director of Franklin Holding and Vice President of FHSBC, averring that Anthonioz has had no affiliation with FHSBC since March, 1998, long before process was served in March, 2000. (Decl. of Benjamin Dessange, Attach to Def. Mot. to Dismiss.) Furthermore, FHSBC argues that the report from the New York Department of State was not current as of the time of service and that the Dun & Bradstreet report was inaccurate.

This court concludes that FHSBC was not properly served. Salon has the burden of establishing that it properly effectuated service. *See Slates v. Int'l House of Pancakes, Inc.* 413 N.E.2d 457, 463 (Ill.App.Ct. 1980) (holding that the plaintiff had the burden of establishing that he properly served an agent of the defendant.) Though self-serving, Dessange's declaration

10

unequivocally states that Anthonioz was not an officer of FHSBC in March, 2000. Salon, on the other hand, maintains that FHSBC's evidence is "directly contradicted" by reports from Dun & Bradstreet and the Department of State of New York. The problem for Salon is that these reports do not directly contradict Dessange's declaration. Both are vague about the time periods during which Anthonioz was allegedly a director of FHSBC. The New York document on which Salon relies is a July, 1999 report from the New York Department of State, almost a year before service was attempted, and it indicates that the latest biennial statement from FHSBC was "overdue." (Exh. F to Pl. Resp.) Even assuming that Anthonioz was a director as of July, 1999, rather than the date on which the information set forth was submitted, the New York state document provides no evidence that Anthonioz was a director in March, 2000.

The Dun & Bradstreet report states that it is updated weekly and indicates that its "source" is the "Department of State." (Exh. E to Pl. Resp.) Salon has made no effort to advise the court of the currency of the information on which this report is based or even to argue what the legal standing of such a Dun & Bradstreet printout is.

In *Duncan Electric Co. v. Trans Data, Inc.*, 325 N.W.2d 811 (Minn. 1982), the Minnesota Supreme Court considered a conflict between a Dun & Bradstreet report and affidavits denying an individual's authority to accept service. The Minnesota service of process statute at issue was similar to the one used today in Illinois. *See* 735 ILCS §5/2-204 (stating that "a private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law.") Rule 4.03 of the Minnesota Rules of Civil Procedure

11

requires service upon a domestic corporation by delivering a copy "to an officer or managing agent, or to any other agent authorized expressly or impliedly or designated by statute to receive service of summons." *Duncan*, 325 N.W.2d at 811. In *Duncan*, affidavits submitted by the defendants stated that the individual who accepted service was not authorized to accept service on behalf of the corporation. *See id.* Plaintiff relied upon the "designation of the individual in a Dun & Bradstreet publication as an 'office manager'," but that evidence the court indicated, "in light of contrary affidavits," was insufficient to establish the requisite express or implied authority to accept service.[1] *See id.*

The evidence is insufficient to satisfy plaintiff's burden to show that FHSBC was properly served. FHSBC's motion to dismiss is granted.

### Failure to State a Claim in Counts II, IV-VI [2]

With Franklin and FHSBC out of the case, the court turns to JDI's Rule 12(b)(6) motion to dismiss Counts II and IV-VI for failure to state a claim.

In Counts II, IV, V, and VI, Salon alleges that the defendants entered into a scheme to

---

[1] A number of courts have pointed out inaccuracies in Dun & Bradstreet reports. *See ATA Info. Svs., Inc. v. J.C.I., Inc.*, 1992 WL 162972, *2 (N.D.Ill. 1992) (noting that Dun & Bradstreet report incorrectly listed one of the defendants as an officer of defendant corporation); *In re Polo Ralph Lauren*, 1996 WL 98981, *4 (N.D.Ill.1996) (Dun & Bradstreet had listed a company as a partnership when, in reality, it was a Chapter "S" corporation); *International Ins. Co. v. Saco Defense, Inc.*, 1998 WL 939680, *3 (N.D.Ill. 1998) (noting that Dun & Bradstreet can be inaccurate).

[2] In Count I, Salon alleges that FHSBC breached its agreement to arrange for the services of the hairstylists who were to staff DESSANGE/CHICAGO. Because Count I is asserted solely against FHSBC, and because FHSBC is dismissed from this lawsuit for insufficiency of service of process, Count I is dismissed.

12

defraud Salon by, among other things, "knowingly recommending, advising, and representing that the L-1 visa was the right and proper visa to be used for [Salon's] operation" (Am. Compl. ¶43(b)) when the defendants knew that these were improper visas. Although Salon does not fully explain its allegations, it is assumed that Salon is alleging injuries that stem from relying on these representations in hiring attorneys and making its subsequent investments in DESSANGE/CHICAGO. Salon uses this alleged fraudulent scheme as the basis for its allegations of common law fraud in Count II; its allegations of violations of the Illinois Consumer Fraud and Deceptive Practices Act in Count IV; its allegations of violations of RICO in Count V; and its allegations of violations of the Illinois Franchise Disclosure Act in Count VI.

The defendants assert that these allegations of fraud are not pled with particularity as required by Federal Rule of Civil Procedure 9(b). Salon responds by saying that it "does not deny that it erred and that each of these counts lacks the necessary specific factual allegations. [Salon] simply states that it wishes to file a Second Amended Complaint to correct these errors." (Pl. Resp. at 11.) Defendants reply that Salon should not be given such an opportunity to amend its complaint.

The federal rules require that leave to amend be freely given, and the court will therefore give Salon one more chance to amend. That said, the court must note that Salon appears unconcerned with trying to draft a pleading that conforms to Rule 9(b), and its presentation of its position on matters such as personal jurisdiction over Franklin and the propriety of its service of process was superficial and not particularly helpful to the court. Its rather cavalier approach to these matters has cost the defense and the court considerable time and effort. If any further

pleading suffers from defects comparable to those in the complaint currently before the court, no further amendment will be allowed.[3]

## Conclusion

For the foregoing reasons, Counts I, II, IV, V, and VI are dismissed, and defendants Franklin Holdings, S.A. and French Hair Style and Beauty Corp. are dismissed from this action. Any amended complaint must be filed within twenty-one (21) days of the issuance of this order.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: March 27, 2001

---

[3]The court reminds Salon that allegations of RICO violations must be pled carefully. In its present form, Salon's RICO count fails to allege, among other things, which substantive portions of RICO have been violated, how they were violated, how Salon was injured through their violation, which defendants conspired to commit these violations, what agreements were made in furtherance thereof, what facts support any of these allegations, and very importantly, the dates, the predicate acts, and the actors associated with the pattern of racketeering that allegedly occurred. The court sees little chance, given plaintiff's factual allegations, that it can plead the relationship and continuity aspects of RICO adequately.